WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.—
DECEMBER, 1876.

## FIELD *v.* FIELD.

*In the matter of the Estate of* CHARLOTTE FIELD, *deceased.*

The duty of counsel to reduce to writing stipulations in the nature of admissions of matters of fact,—considered.

The Surrogate, although authorized by 2 R. S. 96, § 74., upon an accounting, to reserve from distribution a sum sufficient to satisfy a claim against the estate not due, or under litigation,—cannot reserve for anticipated costs of such litigation.

Only claims against the estate, not those against the executor or administrator, can be reserved for, under that section.

In computing the amount of assets in the hands of the executor or administrator, when a judgment creditor applies for leave to issue execution, the claim of the attorney or counsel of the executor or administrator, for professional services rendered to him, and not upon the retainer of the deceased, in the unsuccessful defence of the applicant's judgment, cannot be deducted.

FIELD *v.* FIELD.

An order made after the filing of papers in opposition and fully hearing counsel, is not to be deemed taken by default, within the rules as to leave to open, merely because it was finally made in the absence of the counsel, after adjournments for his convenience.

To justify opening a default, it must appear that the defaulting party has suffered loss or injury, which justice requires he should be permitted to recover or repair.

THIS was an application to open an order made by the Surrogate, on the petition of a judgment creditor.

On the 11th of April, 1876, Garrison Field presented a petition to this court, in which he stated, amongst other things, that he had obtained judgment against Nicholas Field, as executor of said Charlotte Field, deceased, for $3,007.25, damages and costs, and also $92.89 costs on appeal; and praying that the executor be required to show cause why an execution should not be issued. An order was thereupon made, requiring the said executor to appear on the 21st, then instant, and render an account and show cause accordingly. A citation to that effect was duly sworn on the 13th; and on the return day, the matter was adjourned, and was thereafter postponed from time to time, until the 24th day of May, following, on which day the executor filed a verified account or "statement" of the affairs of the estate, from which it appeared that he had assets of the estate in his hands, amounting to $4,109.12, to which may be added, on suggestion and by consent, $2,589 more, being the amount of a mortgage given by one Yerks, making in all 6,698.12; and that he had paid out the sum of $1,383.82; that claims had been presented against the estate, to the amount of $4,034, of which $1,730, seemed to be for attorney and counsel fees, of which a portion was apparently incurred in the case, in which the then petitioner's judgment were obtained. Treating this last sum as composed of claims to be paid in full, there remained only an outstanding claim of one Archer unpaid

of $2,300, and the amount of these judgments and interest.

No testimony was taken on the accounting, and there was nothing in the shape of written admissions or stipulations of the parties, other than the amount added, as above stated, to the sum of the assets.

After various adjournments, and after frequent appearances of the parties by counsel, at which no progress was made, on the 7th July, 1876, an order was entered granting leave to issue execution for the sum of $1,975, being about sixty per cent. of the amount due. Execution was accordingly issued; and on the 18th of September, 1876, an application, representing that such execution had been returned unsatisfied, was made to the court for an attachment against the executor, which was granted, and the attachment was issued, and the executor was attached. On the return day, the usual interrogatories were filed, and the same were duly answered on the 10th October, to which day the matter had been duly adjourned, when it was determined that the answers were insufficient to purge the executor of the contempt.

Thereupon, an order was obtained by the executor, on a petition presented for that purpose, requiring the judgment creditor to show cause, on the 21st Oct., why the order directing execution to issue should not be vacated. The grounds of the application, as set forth in the petition were, in substance, that the executor was ignorant of the order directing execution to issue, until he was called upon by the sheriff with the execution; that at the time said order was made, an action (*Archer* v. *Field*) was pending, to recover the amount of said claim of $2,300, reserved as aforesaid, and which action was still undetermined; that an appeal had been, on the 26th day of July, 1876, taken by the executor, from the judgment of the general term of the

Supreme Court, on which judgment this court had directed execution to issue, and it was stated, that in so appealing, the executor did not give the requisite undertaking to stay execution pending such appeal; and he alleged that he could not safely pay the amount of the execution pending said action and appeal.

This court, on the 3d Nov., declined to vacate the order permitting execution to issue.

The application was by permission, renewed on the 29th Nov., on petition and affidavits, alleging, amongst other things, that the order granting leave to issue execution "was issued by default;" that the order for the attachment was granted *ex parte,* and without knowledge by this court, that the appeal had been perfected; that the court in fixing the amount in the order for leave to issue execution, acted under a mistake of the facts; and that there was a palpable error in the amount fixed, for which execution was ordered to be issued, as appeared from the face of the account, the amount being much too large, and especially considering the action pending about the disputed claim of Archer, and the appeal. The affidavit of Mr. Millard, proctor for the executor, read on the application, tended to show that the "Yerk's mortgage" was added to the statement of the executor, so filed, without his knowledge or consent; that the appeal to the Court of Appeals and the pendency of the action of *Archer* v. *Field,* touching the claim of $2,300, were matters of statement made by counsel, in presence of this court, pleading the application for leave to issue execution.

J. S. MILLARD, *and* C. FROST, *for the executor.*

CALEB GRIFFIN, *for the judgment creditor.*

THE SURROGATE.—The history of this case affords an illustration of the frequently loose manner in which pro-

ceedings are conducted by counsel. Often, the gravity of the questions, and interests involved, are, from the pressure of other business, overlooked, as they would not probably be in proceedings in other courts, where rules are established for the government and guidance of counsel. It is exceedingly unsatisfactory that a matter should be permitted to drift along from week to week and month to month, without much else being accomplished than to meet and adjourn by consent, or by reason of the absence of counsel. It results from such a course, that, in process of time, the court, and possibly the counsel, in a great measure, lose sight of the questions involved, and only recall them after considerable study and effort. In this very case, it is now impossible for me to conjecture why the order granting leave to issue execution was not granted on the day when the executor filed his account, or "statement." It is not, therefore, surprising that I should fail to recall occasional conversations of counsel about any of the matters involved. The higher courts have long established rules to the effect that they will disregard all agreements, or stipulations of counsel not reduced to writing, and signed. So, an admission of facts, in a proceeding, should be reduced to writing, to be of any effect, for the reason that it will not be safe to trust to the frailty of memory, especially after the lapse of a considerable period.

In this proceeding, which was commenced in April, last, and concluded in July, following, I have nothing whatever before me, except the petition and the account. Not a particle of testimony was taken, and the only admission made by the parties is embodied in the account as a charge against the executor, in my own handwriting, as follows: " Yerk's mortgage (admitted) $2,589." Had a request been made that other admissions, if any, affecting the matter should be reduced to

writing, doubtless it would have been done. Of casual conversations between counsel, the court cannot be expected to take note. I certainly have no recollection of hearing it said that the Archer claim was then being litigated ; while I have a positive recollection that there was conversation about an intention to appeal to the Court of Appeals from the judgment in question. Certainly, no request was made that any sum should be reserved for costs, in either of the cases, and the account, or " statement" of the executor, on file, does not state the existence of litigation in regard to any claim. It seems to me, however, that if both facts had been written down as admissions, there would have been no mistake or error committed, which would warrant this court in vacating the order granting leave to issue execution.

Has this court power to authorize an executor, or administrator, to retain moneys of the estate, to meet the probable expenses of a present, or prospective litigation ? The only provision I have been able to find in the statute, on the subject, is as follows : " If upon the representation of an executor or administrator, or otherwise, it shall appear to the satisfaction of the Surrogate, that any *claim* exists *against the estate of the deceased*, which is not then due, or upon which a suit is then pending, he shall allow a sum sufficient to satisfy *such claim*, or the proportion to which it may be entitled, to be retained for the purpose of being applied to the payment of *such claim* when due, or when recovered, or of being distributed according to law." (3 *R. S.*, *5th Ed.*, 183, § 74; 6 *ed. p.* 104, § 89; see *Hallett* v. *Hare*, 5 *Paige*, 315.)

In fixing the amount for which execution should issue, the Archer claim was taken into consideration, and the executor permitted to retain the full proper proportion thereof, besides his commissions. Can this court go farther and authorize him to retain the uncer-

tain and unascertained costs of a present or future action? To do this properly, it would be required to know, in advance, whether the tribunal in which it was, or might be pending, would award costs to be paid by the executor personally, or out of the fund. If the former, then the executor could made no charges as against the estate, even as between attorney and client, to the prejudice of creditors of the estate. (*Hosack* v. *Rogers*, 9 *Paige*, 461.)

The Commissioners, now engaged on a revision of the statutes, propose to amend section 74, above quoted, by requiring the decree to direct that a sum sufficient to pay an outstanding claim, or the proportion to which it is entitled, " *together with the probable amount of the interest and costs*," be retained, &c. Until some such provision shall be enacted, I do not well see how this court, being a creature of the statute, and having its power prescribed and limited by legislative enactments, can assume, as among its incidental powers, that of ordering a sum to be reserved to meet the costs and expenses of a litigation, even where the facts are properly presented to it.

I certainly can discover no mistake or error committed, as against this executor, which would justify me in reopening the matter (*Wright's accounting*, 16 *Abb. Pr. N. S.*, 446). * Possibly, without due consideration, my attention, not having been called to it by counsel, an error may have been committed, in deducting from the amount of the assets, the $1,730 claimed by counsel, for professional services, rendered, in part, as I understand, in the very action which resulted in the judgment in question. The effect is to cause this creditor to contribute toward paying the charges of his adversary in resisting the claim, when the court had

---

*Compare *People* ex rel *Wright* v. *Coffin*, 7 *Hun*, 608.

awarded costs to the creditor himself. In reality, the amount of his recovery would be thereby diminished, for that purpose. This cannot be done. (*Hosack v. Rogers, supra.*) Indeed, there was no proof before me, that the bills of Calvin Frost and J. S. Millard were for legal services, but the counsel for the judgment creditor seems to have assumed them to be such, and it was not asked that they should stand upon the footing of any other unsettled claims. If they consist of charges for professional service rendered for the executor, then they are claims against him, and not " against the estate of the deceased," referred to, and provided for, in section 74.

It is urged as one reason why this application should be granted, that the order sought to be vacated, was taken by default. It can scarcely be considered a *default*, where counsel appears, files his papers, says, what he has to say, and subsequently fails to appear on the various days to which the matter was adjourned, in order to give him an opportunity to be further heard, should he desire it. I believe such was the case here, and the order was only made when it became quite evident that he regarded the case as closed, in so far as the executor was concerned. Besides, in order to the opening of a default, even, it must be made to appear that the defaulting party has suffered loss or injury in consequence, which justice requires he should be permitted to recover or repair. Here I fail to see how the executor would be benefited by reopening the matter. Quite the contrary, if the views above expressed, are correct.

The application denied with costs.